**D.R. EVANS, Plaintiff–Appellee,**

v.

**BOARD OF COUNTY COMMISSIONERS OF THE COUNTY OF BOULDER, COLORADO; Gary Goodell, in his capacity as Chief Building Official, Defendants–Appellants.**

No. 92–1021.

United States Court of Appeals,
Tenth Circuit.

May 28, 1993.

Robert E. Youle and Brian G. Eberle of Williams, Youle & Koenigs, P.C., Denver, CO, for plaintiff-appellee.

H. Lawrence Hoyt, Boulder County Atty., and Madeline J. Mason, Deputy County Atty., Boulder, CO, for defendants-appellants.

Before TACHA and BRORBY, Circuit Judges, and BROWN,* District Judge.

BRORBY, Circuit Judge.

This appeal springs from a controversy between an amateur radio operator, D.R. Evans, and the Boulder County Board of Commissioners (County or Board) concerning the height of an antenna tower in a residential neighborhood. Evans desired a tower 100 feet high; the County decided thirty-five feet was sufficient; and the district court decided eighty feet was just right. We reverse.

## I

### Facts

Evans owns a home located upon a 1.28–acre tract in a zoned residential area. The area's principal attraction is a view of the nearby Rocky Mountains. The district court judge who initially heard the case aptly described the residential neighborhood as follows:

[There are] some very specific interests of Boulder County in general and this particular neighborhood in—specifically which

affect[ ] this case.... First of all, Boulder County in general is an unusual county ... because it has an unusual panoramic mountain view. And a lot of the people who live in Boulder are very concerned with the view ... people that live on the slope of Davidson Mesa looking to the west have a view which is probably one of the greatest views on the eastern slope ... people buy in that area because of the view. This is one of the important considerations of living in that area ... where people buy lots for the view in such an area as this neighborhood, devaluation of property may occur where the view actually is affected.

In order to preserve the views enjoyed by residents, the County imposes a general height limitation of thirty-five feet for structures. The height limitation precludes Evans from conducting the radio communications he desires. Evans, a highly qualified ham radio operator, seeks to conduct amateur radio research, provide emergency communications, and engage in intercontinental communications in order to foster international good will. The radio experts agreed that limiting Evans to a thirty-five foot antenna tower would significantly impair Evans' ability to accomplish his legitimate purposes. Although the County conceded this point, it contended other amateurs in the area successfully conduct some communications with thirty-five foot antennas. Additionally, neighborhood residents presented a strong interest in maintaining the status quo. They expressed concern that the erection of a large metal antenna tower would not only interfere with the superb aesthetic views they enjoyed, but would also devaluate their property. Evans believed he could alleviate the problem by screening the tower with trees. Despite Evans' commitment to plant 200 trees on his property, the trees would not be of sufficient height to screen the proposed tower for at least ten years.

## II

### Background

This dispute originated in 1987 when Evans applied to Boulder County for a building

* The Honorable Wesley E. Brown, United States District Court Judge for the District of Kansas, sitting by designation.

permit to erect a 125 foot tower. The building permit and subsequent application for a variance were denied. The district court determined the County's consideration of Evans' application conformed with the FCC's regulations in "PRB–1".[1] *Evans v. Board of County Comm'rs*, No. 87–Z–1595. We affirmed the district court decision. *Evans v. Board of County Comm'rs*, No. 88–2223 (10th Cir. Mar. 12, 1990) (unpublished order and judgment). In 1988, Boulder County adopted a set of amendments which in part established a limited impact special use review process for consideration of proposals to erect amateur radio towers. Evans subsequently filed an application with the County for a special use permit. The application specified four different tower configurations and proposed the County select the most suitable option. Each configuration involved a different tower height ranging from sixty to 100 feet. Two of the configurations directly linked the permissible tower height to the height of the trees planted to screen the tower.

After a public hearing on May 31, 1990, the County determined the proposals lacked adequate screening of the tower and failed to meet the criteria for special use approval. Evans challenged the County's denial on federal preemption grounds. The district court in a published opinion, *Evans v. Board of County Comm'rs*, 752 F.Supp. 973 (D.Colo. 1990), held the special use review regulations were indeed preempted by PRB–1. Under the language of the County's regulations when read as a whole, the district court held a special permit could be granted only if it complied with the thirty-five foot height requirement. The court found that such an absolute prohibition on antennas greater than a certain height was invalid on its face as it contravenes the purpose behind the federal government regulations. *Id.* at 977. Accordingly, the court granted Evans' motion for summary judgment and directed the County to reconsider Evans' application within six months.

In response to the district court order the County adopted amendments which affirmatively provided the Board may approve amateur radio towers exceeding the standard height limitations. On August, 21, 1991, the County reconsidered Evans' application and once again held a public hearing. At that hearing and throughout the course of this dispute, the County heard testimony from a wide variety of sources including experts on ham radio, land use zoning, and real estate values, as well as neighborhood residents and members of the public.

## III

### The Board Decision

The County rejected the special use permit in a written order. The pertinent portions of this order stated:

[B]ased on the evidence presented ... the Board finds that the [application] does not meet the criteria for limited impact special use approval as set forth ... for the reasons that the proposed tower will not be adequately screened, and will not be in harmony with the character of the neighborhood; ...

... [T]he Board is required not only to consider the criteria set forth in [the zoning regulations], but specifically to balance the needs of amateur radio proponents against the impacts on the neighborhood as determined pursuant to the Zoning Resolution; ...

... [I]n performing this required balancing, the Board finds that the needs of the Applicant ... do not outweigh the adverse impacts on the neighborhood, for the reasons that there is evidence that other ham radio operations currently exist in the neighborhood and meet the 35–foot height limitation; that the need of the Applicant for a higher tower here is for intercontinental transmission, technical analysis and scientific research; that a 60–foot to 100–foot tower will visually and aesthetically degrade the neighborhood, has the potential to reduce property val-

1. On September 19, 1985, the FCC issued a ruling dealing with conflicts between radio operators and local zoning law. This ruling may be found in *Matter of Federal Preemption of State &* *Local Regulations Pertaining to Amateur Radio Facilities*, 101 F.C.C.2d 952, 50 Fed.Reg. 38,813 (1985). For convenience, we will refer to this ruling as PRB–1.

ues, and will greatly exceed and is basically incompatible with the one-story residences in the area; and that other locations exist within the unincorporated County where a proposed tower of this height would be more compatible with the surrounding neighborhood and could be approved.

## IV

### The District Court Decision

Evans once again appealed to the district court contending the County's application of its zoning regulations had been preempted by the FCC order.[2] As there were no disputed issues of material fact, both parties moved for summary judgment.

The district court in an unpublished decision, *Evans v. Board of County Comm'rs*, No. 90–F–1150, Dec. 31, 1991, granted Evans' motion for summary judgment and held the regulations were invalid as applied. The court based this decision on three points: (1) the Zoning Resolution initially was preempted by federal law; (2) the Board failed to adequately consider Evans' needs for a greater antenna height in violation of PRB–1; and (3) the County based its denial of Evans' application upon inconsistent grounds. The court then selected one of Evans' four proposed options and ordered the County to approve the application for a special use permit to erect an eighty-foot antenna tower.

## V

### The FCC Regulations

Ever since Guglielmo Marconi erected the first radio antenna, conflicts have arisen between amateur radio operators and local zoning authorities concerning the height of antenna towers. Amateur radio operators well know their ability to effectively receive and transmit communications directly relates to the height and location of their radio antenna. It is doubtful there exists an amateur radio operator who does not desire a higher antenna. On the other hand, zoning authorities exist, in part, to regulate land use based upon aesthetic considerations. Undoubtedly, most zoning authorities would detest few scenarios more than that of a high steel tower and its attendant guy wires protruding from a residential neighborhood and interfering with a superb mountain view.

The FCC, recognizing the inherent and continuing conflict between radio operators and zoning authorities, attempted to resolve the conflict by issuing an order described as PRB–1, wherein the FCC stated, in part, as follows:

> In this situation, we believe it is appropriate to strike a balance between the federal interest in promoting amateur operations and the legitimate interest of local government in regulating local zoning matters. The cornerstone on which we will predicate our decision is that a reasonable accommodation may be made between the two sides.
>
> ... State and local regulations that operate to preclude amateur communications in their communities are in direct conflict with federal objectives and must be preempted.
>
> ... We will not ... specify any particular height limitation below which a local government may not regulate, nor will we suggest the precise language that must be contained in local ordinances.... [L]ocal regulations which involve placement, screening, or height of antennas based on health, safety, or aesthetic considerations must be crafted to accommodate reasonably amateur communications,[3] and to represent the minimum practicable regulation to accomplish the local authority's legitimate purpose.

---

2. Evans' suit was broader than indicated and also involved an attack upon the facial validity of the County's zoning regulations. The district court held the zoning regulations were facially valid as the court version of the Zoning Resolution abolishes the absolute height prohibition. Neither party has appealed this portion of the district court's decision.

3. In accordance with the subsequent FCC order and other case law, we read the phrase "accommodate reasonably amateur communications" as "reasonably accommodate amateur communications."

The FCC followed PRB–1 with an order (47 CFR § 97.15(e)), which is quoted as follows:

> Except as otherwise provided herein, a station antenna structure may be erected at heights and dimensions sufficient to accommodate amateur service communications. State and local regulation of a station antenna structure must not preclude amateur service communications. · Rather, it must reasonably accommodate such communications and must constitute the minimum practicable regulation to accomplish the state or local authority's legitimate purpose.

■ The regulations attempt to strike a compromise between two competing interests and, as is true of many compromises, have omitted the details leaving both sides the impression they received the biggest piece of the divided cake. Notwithstanding the inherent vagueness in the language, several principles may be gleaned from the FCC regulations. First, zoning authorities must reasonably accommodate amateur communications. Second, local regulations should be the minimum practicable in order to accomplish the zoning authority's legitimate purposes. Third, local authorities may not altogether preclude amateur communications. Finally, the FCC has explicitly declined to regulate the specific permissible heights for antenna towers.

## VI

### Preemption

■■ We review the district court's grant of summary judgment de novo. *First Interstate Bank of Denver, N.A. v. Pring*, 969 F.2d 891, 895–96 (10th Cir.1992), cert. granted in part, —— U.S. ——, 113 S.Ct. 2927, 124 L.Ed.2d 678 61 U.S.L.W. 3403, 3818 (S.Ct. June 7, 1993) (No. 92–854). Thus, we give no deference to the district court's preemption determination and examine the preemption issue as if we were sitting as the trial court in the first instance.

■ The Supremacy Clause (Art. VI) of the Constitution provides Congress with the power to preempt state law. Preemption may occur in any one of at least four situations: (1) express preemption, which results when Congress expresses a clear intent to preempt state law, *Morales v. Trans World Airlines, Inc.*, —— U.S. ——, ——, 112 S.Ct. 2031, 2036, 119 L.Ed.2d 157 (1992); *Louisiana Public Serv. Comm'n v. FCC*, 476 U.S. 355, 368, 106 S.Ct. 1890, 1898, 90 L.Ed.2d 369 (1986); (2) implied preemption, which results when state law "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress," *Hines v. Davidowitz*, 312 U.S. 52, 67, 61 S.Ct. 399, 404, 85 L.Ed. 581 (1941); (3) conflict preemption, which results from an actual conflict between federal and state law even though Congress is silent, *Florida Lime & Avocado Growers, Inc. v. Paul*, 373 U.S. 132, 143, 83 S.Ct. 1210, 1217, 10 L.Ed.2d 248 (1963); and (4) field preemption, which results from a determination that Congress intended to remove an entire subject from state regulatory authority, *Fidelity Federal Sav. & Loan Ass'n v. de la Cuesta*, 458 U.S. 141, 153, 102 S.Ct. 3014, 3022, 73 L.Ed.2d 664 (1982). Preemption may also result from action taken by a federal agency acting within the scope of its congressionally delegated authority. *Capital Cities Cable, Inc. v. Crisp*, 467 U.S. 691, 699, 104 S.Ct. 2694, 2700, 81 L.Ed.2d 580 (1984).

■ By applying the basic legal principles underlying the doctrine of preemption to PRB–1, we reach the following conclusions. The FCC labeled PRB–1 as a "limited preemption policy", and specifically stated it would not specify any height limitation, but clarified that local authorities may not preclude amateur communications. Because the FCC explicitly declined to regulate the height of radio antenna towers, such regulation rests with the local zoning authorities provided they reasonably accommodate amateur communications with the minimum practicable regulation necessary to accomplish their purposes.

Federal courts have given effect to the limited preemption policy of PRB–1. In *Thernes v. City of Lakeside Park*, 779 F.2d 1187, 1189 (6th Cir.1986), it was recognized that a ban upon the erection of amateur radio station antennas may contravene federal law. Courts have subsequently held that any local ordinance which absolutely prohibits antennas over a certain height is necessarily

preempted. *See Evans v. Board of County Comm'rs,* 752 F.Supp. at 977; *Bodony v. Incorporated Village of Sands Point,* 681 F.Supp. 1009, 1013 (E.D.N.Y.1987). Moreover, courts have held that local ordinances are preempted when, as applied, they do not provide for the reasonable accommodation of amateur radio communications. *MacMillan v. City of Rocky River,* 748 F.Supp. 1241, 1248 (N.D.Ohio 1990); *Bulchis v. City of Edmonds,* 671 F.Supp. 1270, 1274 (W.D.Wash.1987).

Although courts have found local ordinances preempted when a height limitation is imposed, they recognize that zoning is typically a function reserved for local regulation. "Land use policy customarily has been considered a feature of local government and an area in which the tenets of federalism are particularly strong." *Izzo v. Borough of River Edge,* 843 F.2d 765, 769 (3d Cir.1988). Thus, courts should proceed with caution when considering whether precise, specific, local ordinances are preempted by vague federal regulations. Even though the FCC has the power to enact regulations which would preempt conflicting local ordinances, it specifically stated "[t]he cornerstone on which we will predicate our decision [PRB–1] is that a reasonable accommodation may be made between the two sides." In fact, in PRB–1 the FCC expressed its desire to give deference to the local authorities: "We are confident ... that state and local governments will endeavor to legislate in a manner that affords appropriate recognition to the important federal interest at stake here." Therefore, the FCC has decided to permit local regulatory behavior which accomplishes the local agency's legitimate purposes through the minimum practicable regulation.

## VII

### Review of the Board Decision

█ In reviewing local land use regulations of amateur radio antenna towers, a reviewing court should apply a two-part analysis. *See Bulchis,* 671 F.Supp. at 1274. First, the court should examine the applicable regulations to determine if they are facially consistent with PRB–1. In this case the district court found the local regulations facially valid, and since neither party appealed that holding, it is unnecessary to analyze the first prong. Second, the reviewing court examines the decision of the local board to determine if the local board's application of the regulations is preempted by PRB–1.

█ In deciding whether the Board's regulations are preempted as applied to Evans' special use permit, we give due deference to the factual determinations made by the Board. Federal courts should give preclusive effect to the factfinding of state or local administrative tribunals. *University of Tennessee v. Elliott,* 478 U.S. 788, 798, 106 S.Ct. 3220, 3226, 92 L.Ed.2d 635 (1986).[4] The district court did not exercise such deference when it rejected the Board's conclusion that the tower would be inadequately screened by trees. The court held the rationale was inconsistent: "[c]omplete shielding of the antenna by trees would impact mountain views no less than the antenna itself." It was improper for the district court to reexamine the Board's factual conclusions. Therefore, upon exercising our de novo review, we need only determine whether the County's application of its local regulations to the facts as they interpreted them are preempted by federal law.

PRB–1 dictates that local ordinances are preempted as applied to ham radio operators when they do not reasonably accommodate amateur communications through the least restrictive regulation practicable. In making its determination, the local board must consider all relevant factors and explore potential alternatives. *Howard v. Burlingame,*

---

4. The Supreme Court in *Elliott* went on to hold that when a state agency is acting in a judicial capacity, federal courts must give the agency's factfinding the same preclusive effect to which it would be entitled in the state courts. *Elliott,* 478 U.S. at 799, 106 S.Ct. at 3226. The applicable law in Colorado is that a reviewing court may not set aside the Board's decision " 'unless it is unsupported by any competent evidence.' " *Board of Assessment Appeals v. Colorado Arlberg Club,* 762 P.2d 146, 151 (Colo.1988) (quoting *Board of County Comm'rs v. Colorado Bd. of Assessment Appeals,* 628 P.2d 156, 158 (Colo.Ct. App.1981)). Because there was competent evidence in support of the Board's findings, we accordingly give them preclusive effect.

1988 WL 169074, *3 (N.D.Cal.1988) (unpublished decision); *see also Bodony*, 681 F.Supp. at 1012–13.

■ The Board heard an abundance of testimony at three different hearings relating to erection of an antenna tower on Evans' property. The Board elicited comments from Evans, his neighbors, experts on ham radio, and experts in real estate. Four of Evans' adjacent neighbors were vehemently opposed to the erection of a tower in excess of thirty-five feet. Evans was provided the opportunity to respond to the concerns of those who opposed his application for a permit. By the end of the hearings, the Board was well aware of the range of communication capability that could be achieved with antenna towers of various heights. In fact, prior to the last hearing Evans wrote a letter to the County in which he stated it would be unnecessary to present further expert testimony as "most of the issues have been thrashed through *ad infinitum* in our previous hearings."

The Boulder County Land Use Staff drafted a four-page memorandum summarizing the request and applicable standards and ultimately concluding the tower would be inadequately screened and would not be in harmony with the surrounding environment. Staff recommended that a sixty-foot crank-up tower might be a feasible alternative. Evans, however, testified that a crank-up tower would be implausible, as it would not withstand the high winds that frequent Boulder.

Ultimately, after the August 21, 1991, hearing, the County again denied the permit. The County interpreted the FCC regulations to mandate a balancing between the needs of the amateur radio proponents and the adverse impacts on the neighborhood. In performing this analysis, the County determined Evans' need for a higher tower was outweighed by the aesthetic degradation of the neighborhood and potential reduction in property value. The Board further suggested that locations within the County exist where such a proposal could be approved.

PRB–1 recognizes that regulations affecting the placement, screening and height of antennas are permissible when based on health, safety or aesthetic considerations, as long as they reasonably accommodate amateur communications with the minimum practicable regulation necessary. Thus, the County's justification of preserving the aesthetic views was acknowledged by PRB–1 as a legitimate local concern. Moreover, the County's decision was informed and recognized Mr. Evans' communication needs. Although the County was aware a thirty-five foot tower would not completely meet Evans' legitimate goals, "the law cannot be that municipalities have no power to restrict antennas to heights below that desired by radio licensees." *Williams v. City of Columbia*, 906 F.2d 994, 998 (4th Cir.1990).

In other cases where local regulations were preempted as applied, courts held the record was devoid of any evidence demonstrating the Board reasonably accommodated the amateur operator. *Bodony*, 681 F.Supp. at 1013; *Bulchis*, 671 F.Supp. at 1274. Unlike the zoning boards in *Bodony* and *Bulchis*, the record is replete with evidence that Boulder County reasonably accommodated Evans' amateur communication goals. Despite its debatable viability, the County was willing to consider the option of a crank-up sixty-foot tower in an effort to reasonably accommodate Evans. The Board also approved a special use permit for another tower in excess of thirty-five feet, where the County felt that there was adequate screening and the views were unimpaired. Finally, the County's recognition that other potential locations might be more suitable for the construction of the tower demonstrates the County was not inflexible in its consideration of Evans' application.

The Board in drafting its resolution mischaracterized its responsibility to reasonably accommodate as a balancing test. "[I]n performing this required balancing, the Board finds that the needs of the Applicant ... do not outweigh the adverse impacts on the neighborhood." This balancing approach was adopted by the Fourth Circuit. "The law requires only that the City balance the federally recognized interest in amateur radio communications with local zoning concerns." *Williams*, 906 F.2d at 998. We believe the balancing approach underrepresents the FCC's goals as it specifically select-

ed the "reasonably accommodate" language. Nevertheless, despite its mischaracterization, Boulder County made efforts to reasonably accommodate Evans' communication needs. In this case, denial of the permit after evaluating options and thoroughly considering the relevant evidence was a reasonable accommodation.

In determining whether the County utilized the minimum practicable regulation in addressing Evans' proposal, the County must have explored alternatives to a blanket denial of the application. *See Howard,* 1988 WL 169074 at *3. The County's legitimate purposes behind denying the permit were to preserve the aesthetic views and maintain the property values in the community. Since the County determined there would be inadequate screening of the tower and the proposed alternatives by Evans and the Boulder County Land Use Staff would not alleviate the problem, the denial of the permit in this case was the minimum practical regulation necessary to accomplish their goals. In summary, because the County made efforts to reasonably accommodate Evans' amateur communications utilizing the minimum practical regulation, the County's regulations are not preempted as applied.

Consequently, we **REVERSE** the decision of the district court and hold the decision of the Boulder County Board of Commissioners should be reinstated as it is not preempted.