Sylvia PENTEL, Appellant,

v.

**CITY OF MENDOTA HEIGHTS,**
Appellee.

No. 93–1026.

United States Court of Appeals,
Eighth Circuit.

Submitted Oct. 13, 1993.

Decided Jan. 18, 1994.

**1262**

John Bellows, St. Paul, MN, argued (Christopher D. Inlay, Washington, DC, on brief), for amicus curiae.

Eric J. Nystrom, St. Paul, MN, argued, for appellee.

Before McMILLIAN, BOWMAN, and MAGILL, Circuit Judges.

BOWMAN, Circuit Judge.

Pursuant to its zoning ordinance, the City of Mendota Heights, Minnesota, denied Sylvia Pentel, an amateur radio operator, permission to erect a 68–foot radio antenna tower in her yard. Pentel then sued the city, claiming that the zoning ordinance was preempted by a Federal Communications Commission ruling known as PRB–1, which requires the city reasonably to accommodate her amateur communications. The District Court granted summary judgment to the city, and Pentel appeals. Because we conclude that the city did not reasonably accommodate Pentel when it limited her to the continuing use of her ineffective 56.5–foot antenna, we reverse and grant summary judgment to Pentel.

## I.

Pentel is an amateur radio operator who uses radio communications to serve the public interest. After she was licensed by the FCC in December 1988 to operate an amateur radio and a station from her home, she installed on her roof a vertical radio antenna that reaches a height from the ground of 56.5 feet. Over the next two years, Pentel was unable to establish reliable radio communications with other amateurs across the United States, and she was able to establish only one international contact. Pentel concluded that her existing antenna thus was not adequate for domestic, much less international, communications.

Accordingly, Pentel began preparing to install a more sophisticated antenna. The replacement was to be a retractable steel tower that measured 30 feet when lowered and 68 feet when fully extended. This tower, which Pentel planned to have installed professionally in accordance with its manufacturer's specifications, was to have mounted on its top two directional aluminum antennas.[1]

Pentel was unaware when she installed her original antenna that she was violating the city's zoning ordinance, which limits all structures, including radio antennas, to a height of twenty-five feet.[2] While preparing to install her new antenna, Pentel became aware of the city's restrictions, and in January 1991 she filed for a variance pursuant to Mendota Heights, Minn., Zoning Ordinance § 5.5 (1981).

The city evaluated Pentel's application through a planning report prepared by a city staff member, and at a planning commission meeting and two city council meetings. The city then sent Pentel a letter in February 1991 telling her that her application had been denied. The letter did not state any factual findings, reasons for the denial, or what Pentel could do to gain the city's approval. In an attempt to offer Pentel a reasonable accommodation, as required by *In re Federal Preemption of State and Local Regulations Pertaining to Amateur Radio Facilities*, 101

---

1. Pentel's proposed antenna would be more effective than her existing set-up for two reasons. First, Pentel's current vertical antenna dissipates signals in all directions, while her proposed directional antenna would concentrate and collect signals, thus increasing her ability to transmit and receive in a specific direction. Second, an antenna's effectiveness increases with its height. Pentel's existing antenna is blocked by trees. Her taller replacement antenna, when extended, would be at or near the tops of nearby trees, thus improving her signal transmission and reception.

2. The parties failed to furnish this Court a copy of § 8B.4(1) of the Mendota Heights zoning ordinance, and the city was unable to furnish a copy when contacted by this Court. We do not pursue the issue, however, because the parties agree, and the District Court found, that this section limits Pentel's radio antenna tower to a maximum height of 25 feet.

F.C.C.2d 952, 50 Fed.Reg. 38,813 (1985) (codified at 47 C.F.R. § 97.15(e) (1992)) [hereinafter PRB–1], the city council granted Pentel a special-use permit that allowed her to continue using her existing antenna, which she had erected in contravention of the city's zoning ordinance.

Pentel then filed suit against the city in the District Court, claiming that the city's ordinance was preempted by PRB–1 in that the city had not reasonably accommodated her. Agreeing that there were no disputed issues of material fact, Pentel and the city both moved for summary judgment. The District Court granted summary judgment in favor of the city on all claims.[3] Pentel appeals.

## II.

■■■ We review de novo the district court's grant of summary judgment. *United States ex rel. Glass v. Medtronic, Inc.*, 957 F.2d 605, 607 (8th Cir.1992). Because the parties agree that no material facts are in dispute, summary judgment is appropriate in favor of the party that is entitled as a matter of law to a judgment in its favor. *See* Fed. R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 326, 106 S.Ct. 2548, 2552–53, 2554, 91 L.Ed.2d 265 (1986).

Cases centering on zoning regulations governing amateur radio antenna towers present a unique tension among the various parties' interests. On the one hand, a local municipality, through the exercise of its traditional police powers, may regulate the height and placement of radio antenna towers erected in residential districts. A municipality's motivations for such regulation include the possibilities that an antenna may block the line of sight of pedestrians or drivers; constitute a prominent eyesore that also may interfere with a scenic view; fall on nearby residences; or decrease property values.

Amateur radio operators, on the other hand, plainly have an interest in maintaining successful amateur communications and in sustaining a strong network of radio amateurs. The federal government's interests are aligned with those of the amateurs, for amateur radio volunteers afford reliable emergency preparedness, national security, and disaster relief communications. Because there is a direct correlation between an amateur's antenna height and her ability successfully to transmit and receive radio signals, federal interests are furthered when local regulations do not unduly restrict the erection of amateur radio antennas.

The FCC was attempting to referee the tension between these interests when it issued PRB–1, in which it attempted "to strike a balance between the federal interest in promoting amateur operations and the legitimate interests of local governments in regulating local zoning matters." PRB–1 ¶ 22. After weighing local, federal, and amateur interests, the FCC issued a ruling that has a limited preemptive effect on local regulations. *See* PRB–1 ¶ 24. The federal courts that have addressed this ruling have upheld its preemptive effect. *See, e.g., Evans v. Board of County Comm'rs*, 994 F.2d 755, 760–61 (10th Cir.1993); *Thernes v. City of Lakeside Park, Ky.*, 779 F.2d 1187, 1188–89 (6th Cir.1986) (per curiam).

■■■ Courts applying PRB–1 have discerned two means by which PRB–1 may preempt a local ordinance. First, the local regulation may be preempted on its face. The city's zoning ordinance does not conflict on its face with PRB–1 because it neither bans nor imposes an unvarying height restriction on amateur radio antennas. *See Evans v. Board of County Comm'rs*, 752 F.Supp. 973, 976–77 (D.Colo.1990); *Bulchis v. City of Edmonds*, 671 F.Supp. 1270, 1274 (W.D.Wash.1987).[4]

■■■ Second, PRB–1 also preempts a zoning ordinance that a city has not applied in a manner that reasonably accommodates amateur communications. *See Evans*, 994

---

3. In addition to her preemption challenge, Pentel raised various other constitutional challenges that are not renewed here.

4. Pentel's argument that the city's ordinance is void for vagueness is without merit. *See Kolen-*

*der v. Lawson*, 461 U.S. 352, 357–58, 103 S.Ct. 1855, 1858–59, 75 L.Ed.2d 903 (1983); *Williams v. City of Columbia*, 906 F.2d 994, 998 (4th Cir.1990).

F.2d at 761; *MacMillan v. City of Rocky River*, 748 F.Supp. 1241, 1248 (N.D.Ohio 1990). The FCC refused to specify a height below which local governments could not regulate, and instead declared that "local regulations which involve placement, screening, or height of antennas based on health, safety, or aesthetic considerations must be crafted to accommodate reasonably amateur communications, and to represent the minimum practicable regulation to accomplish the local authority's legitimate purpose." PRB–1 ¶ 25.

■ Initially, we must discuss the extent to which this language requires municipalities to yield to amateur interests. Although some courts have evaluated whether the municipality properly balanced its interests against the federal government's interests in promoting amateur communications, *see Williams v. City of Columbia*, 906 F.2d 994, 998 (4th Cir.1990); *MacMillan*, 748 F.Supp. at 1248, we read PRB–1 as requiring municipalities to do more—PRB–1 specifically requires the city to accommodate reasonably amateur communications.[5] *See Evans*, 994 F.2d at 762–63. This distinction is important, because a standard that requires a city to accommodate amateur communications in a reasonable fashion is certainly more rigorous than one that simply requires a city to balance local and federal interests when deciding whether to permit a radio antenna.

■ Application of this reasonable accommodation standard, however, does not require the city to allow the amateur to erect any antenna she desires. Instead, it requires only that the city "consider[ ] the application, ma[k]e factual findings, and attempt[ ] to negotiate a satisfactory compromise with the applicant." *Howard v. City of Burlingame*, 937 F.2d 1376, 1380 (9th Cir.1991); *see, e.g., Evans*, 994 F.2d at 762 (stating that the county was willing to permit a crank-up tower, a shorter tower, or a tower located elsewhere); *Williams*, 906 F.2d at 997 (stating that the city suggested a limitation on the hours the antenna could be extended, and noting that the amateur could apply for a shorter antenna). Under this approach, a local regulation that impairs amateur radio communications is preempted as applied if the city has not crafted it "to accommodate reasonably amateur communications" while using "the minimum practicable regulation [necessary] to accomplish the local authority's legitimate purpose." PRB–1 ¶ 25.

The city informed Pentel that her application had been denied via a bare-bones letter that did not list any bases for the denial. Because the city council failed to make any factual findings,[6] *see White Bear Rod & Gun Club v. City of Hugo*, 388 N.W.2d 739, 742 (Minn.1986) (holding in a case reviewing a city council's denial of a special-use permit that a cryptic listing of reasons for the denial did not constitute factual findings); *VanLandschoot v. City of Mendota Heights*, 336 N.W.2d 503, 509 n. 7 (Minn.1983) (stating that variances and special-use permits are treated identically on judicial review), we need not consider whether, if it had, such findings would be afforded preclusive effect here, *see University of Tenn. v. Elliott*, 478 U.S. 788, 797–99, 106 S.Ct. 3220, 3225–27, 92 L.Ed.2d 635 (1986).

Although the city failed to make any factual findings, the planning report and hearings suggest four potential justifications for the city's denial of Pentel's variance application. We now turn to those justifications. First, the city had no reason to fear that the antenna would interfere with other residents' television and radio reception; the city's planning report states that Pentel was prohibited by the FCC from causing, and that she could lose her license if she failed to correct, such a problem.

---

5. At various places in PRB–1, the FCC states that, in considering the issue before it, it weighed federal and amateur operator interests against those of local governments. After balancing these interests, the standard that the FCC concluded was appropriate was that a local government must reasonably accommodate amateur radio communications. *See* PRB–1 ¶¶ 22, 24.

6. Mendota Heights, Minn., Zoning Ordinance § 5.5(5) (1981) states that the city council's action in denying a variance application "shall constitute a finding and determination by the City Council that the conditions required for approval do not exist." This conclusory language does not provide a court with any documented, enumerated factual findings to review. The city may have made factual findings for its purposes, but it has not for ours.

Second, the city expressed concerns about the tower's safety in light of the strong winds that frequent the Mississippi River valley. Pentel presented to the city the manufacturer's specifications, which rate the tower secure in eighty-mile-per-hour winds. Although the city generally relies on such specifications produced by manufacturers, it declined to do so in this case. In addition, the tower was retractable, and the city could require Pentel to retract it whenever bad weather threatened. Moreover, the city in 1987 allowed a nearby amateur radio operator to erect a similar tower, and that one was closer to the operator's property line than Pentel's was to be. The record before us thus does not establish a factual basis for the city's safety concerns.

Third, the city claims that it believed it reasonably accommodated Pentel because she already successfully engages in amateur communications. Pentel submitted with her application a letter of commendation for her public services. The city's planning report concluded that this letter demonstrated the adequacy of Pentel's current antenna. Pentel has pointed out, however, that the public services cited in the letter were not related to the amateur communications in which she engaged from her home. In fact, the letter makes it clear that the amateur communications for which Pentel was to be commended were conducted at the Air National Guard base in Minneapolis.

In addition, the mayor and some members of the city council indicated in their depositions that they concluded from Pentel's statements at the hearings that she already was communicating effectively, albeit not to the extent she desired. The hearings' minutes indicate that Pentel stated that she was able to reach only sporadically various places in the United States, and that her current antenna did not allow reliable long-range transmissions. When prompted, her attorney reluctantly attempted to quantify the communications: he characterized Pentel's current chances for making contact at 40 percent, and estimated those chances at 80 to 90 percent with the improved tower. The context of these remarks and Pentel's other statements indicate that these chances of success referred to domestic communications only.

This quantification of Pentel's ability to communicate was thoroughly mischaracterized by the mayor at his deposition, where he stated that Pentel was able to communicate worldwide 60 to 70 percent of the time, but that she wanted to have reliable worldwide communications 100 percent of the time. One city councilmember understood Pentel's statements regarding her transmission success, but others demonstrated a fuzzy understanding, at best, of Pentel's situation. Although what constitutes "successful" amateur communications is difficult to quantify, the evidence in the record does not justify a finding by the city that Pentel's old antenna enabled her "successfully" to engage in amateur communications, and the city was unreasonable if it so found. On the record before us, the city's first three concerns lack factual support.

The city's last reason for denying Pentel's application, that the antenna tower would be unsightly, rests on subjective considerations and is difficult for a reviewing court to evaluate. This reason is undercut, however, by the city's willingness to allow Pentel to keep her present roof-mounted antenna, which reaches a height only slightly below that of her proposed antenna tower, and by the city's allowance of a similar antenna tower nearby. We acknowledge the possible aesthetic difference between an antenna tower and a roof-mounted antenna, but there is no indication in the record that the city attempted to find any compromise that would have accommodated Pentel's amateur communications.

The city's decision to grant a variance that allows Pentel to continue using a wholly inadequate antenna does not constitute an accommodation in any practical sense. In addition, because the city did not reasonably accommodate Pentel, it obviously did not use the least restrictive means available to meet its legitimate zoning purposes. We therefore hold that the city's zoning ordinance as applied in this case is preempted by PRB-1.

### III.

We exhort the parties to work together to arrive at a satisfactory solution to this controversy. PRB–1 requires the city reasonably to accommodate Pentel's needs as an amateur radio operator; what is allowed is the "minimum practicable regulation [necessary] to accomplish the local authority's legitimate purpose." PRB–1 ¶ 25. The District Court's grant of summary judgment to the city is reversed, and the case is remanded to the District Court for the entry of summary judgment in favor of Pentel. Our decision does not mean that the city necessarily must grant Pentel's application as it now stands, but it does mean that the city must make a reasonable accommodation for her interests.