PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 15-2495
_____

JEFFREY DePolo,

Appellant

v.

BOARD OF SUPERVISORS TREDYFFRIN
TOWNSHIP; MICHAEL C. HEABERG; KRISTEN
K. MAYOCK; PAUL OLSON; EVELYN RICHTER;
JOHN P. DIBUONAVENTURO; MARK FREED;
MURPH WYSOCKI, In their capacities as members
of the Board of Supervisors of Tredyffrin Township;
TREDYFFRIN TOWNSHIP ZONING HEARING
BOARD OF APPEALS; ARNOLD BORISH;
DANIEL MCLAUGHLIN; NEILL KLING, in their
capacities as members of the Zoning Heard Board of
Appeals of Tredyffrin Township


SCHUYLKILL TOWNSHIP; PAUL ADACK;
PATRICIA ADACK; MARK SAMUELS;
KIMBERLY SAMUELS; GEORGE RANDOLPH;
SUZANNE RANDOLPH

(Intervenors in D.C.)

_____

Appeal from the United States District Court
for the Eastern District of Pennsylvania
(Civil Action No. 2-14-cv-06689)
District Judge: Stewart Dalzell
_____

Argued January 12, 2016

Before: McKEE, <u>Chief Judge</u>, AMBRO, and SCIRICA,
<u>Circuit Judges</u>

(Opinion filed: August 30, 2016)

Robert B. Famiglio, Esq.
Famiglio & Associates
P.O. Box 1999
Media, PA 19063

Fred Hopengarten, Esq. (ARGUED)
6 Willarch Road
Lincoln, MA 01773
        *Counsel for Appellant*

Maureen M. McBride, Esq. (ARGUED)
Lamb McErlane
24 East Market Street
P.O. Box 565
West Chester, PA 19381
        *Counsel for Appellee Tredyffrin Township*
        *Board of Supervisors, et al*

Stacey L. Fuller, Esq.
John Larkin, Esq. (ARGUED)
Gawthrop Greenwood
17 East Gay Street
Suite 100
West Chester, PA 19381
        *Counsel for Appellee Tredyffrin Township Zoning*
*Hearing Board of Appeals, et al*

Patricia Adack [Pro Se]
Paul Adack [Pro Se]
1235 Horseshoe Trail
Phoenixville, PA 19460

Suzanne Randolph[Pro Se]
1245 Horseshoe Trail
Valley Forge, PA 19481

Kimberly Samuels [Pro Se]
Mark Samuels [Pro Se]
1255 Horseshoe Trail
Phoenixville, PA 19460

George B. Randolph, III, Esq. [Pro Se]
Riley Riper Hollin & Colagreco
717 Constitution Drive
Eagleview Corporate Center, P.O. Box 1265
Exton, PA 19341


William J. Brennan, Esq.
Butera Beausang Cohen & Brennan
630 Freedom Business Center
Suite 212
King of Prussia, PA 19406
        *Counsel for Intervenor Township of Schuylkill*

Christopher D. Imlay, Esq.
Booth Freret & Imlay
14356 Cape May Road
Silver Spring, MD 20904
        *Counsel Amicus Appellant, American Radio Relay League, Inc.*

_____

OPINION OF THE COURT
_____


McKEE, *Chief Judge*

This appeal arises from a land use dispute between Jeffrey DePolo, a federally licensed amateur or "ham" radio enthusiast, and the Township of Tredyffrin ("Township"). DePolo attempted to have the Township's Zoning Hearing Board of Appeals ("ZHBA") approve a 180-foot radio antenna tower on his property so that he could communicate with other ham radio operators around the world. The property is surrounded by mountains or hills, and he claimed a shorter tower would not allow him to reliably communicate

with other ham radio operators. The ZHBA denied permission for a 180-foot tower, but agreed to a tower that was 65-feet tall. The ZHBA viewed that intermediate height as a reasonable accommodation under the applicable zoning ordinance.

DePolo did not appeal that decision to the Chester Court of Common Pleas as is allowed under state law. Instead, he filed this suit in the U.S. District Court for the Eastern District of Pennsylvania. He claims that the Township's zoning ordinance, which prohibited any building taller than 35-feet, is preempted as enacted and as applied under the applicable federal regulation, 47 C.F.R. § 97.15(b), and the closely related FCC declaratory ruling, known as PRB-1. The District Court granted motions to dismiss by the Township's Board of Supervisors ("BOS") and the ZHBA based upon its conclusion that the 65-foot variance offered by the ZHBA was a reasonable accommodation. The District Court also concluded that the Township's zoning ordinance was not preempted by PRB-1.

For the reasons that follow, we conclude that DePolo's failure to appeal the ZHBA's determination to state court rendered the decision final and that, given the unique procedural history of this case, we must afford the ZHBA's final judgment the same preclusive effect that it would have had in state court. It is therefore not reviewable in this suit.

## I.

This dispute results from the frequent tension arising from local land use regulations. Local municipalities enact zoning ordinances to ensure the health, safety and general welfare of those residing within the municipality by regulating activities within the municipality. This typically involves creating various districts within the municipality and then regulating the use of the land and building type within those districts.[1] The land use regulations also usually provide

---

[1] For a comprehensive background and explanation of local land use law and zoning, *see* Gerald S. Dickinson, *Inclusionary Eminent Domain*, 45 LOY. U. CHI. L.J. 854-55 (2014) (explaining that "[a]s land was acquired and

4

that one or more administrative agencies of the local municipality are the appropriate forum for resolving disputes arising from these regulations. Accordingly, local governments are usually responsible for establishing mechanisms and processes to reconcile the competing interests of landowners and their neighbors. This is typically done through zoning ordinances, which are administered by a zoning officer and enforced by a quasi-judicial state administrative agency known as a zoning hearing board.[2]

Amateur radio operators, or "hams," often find that zoning ordinances inhibit the use of their own land by limiting the size of permitted radio towers to an extent that precludes all (or nearly all) amateur communications. Hams have an interest in maintaining successful amateur communications and in sustaining a strong network of radio amateurs. Concomitantly, the towers that are necessary for reliable radio communication may impede the scenic view of neighbors, pedestrians or drivers. Moreover, concerns that such towers could fall onto nearby residences could theoretically decrease property values.

However, disputes such as the one at the center of this appeal affect more than local interests because the federal government also has an interest in preserving amateur radio communications. Hams who broadcast using these towers afford the federal government reliable emergency preparedness, national security, and disaster relief communications. Therefore, federal interests are furthered when local land use regulations do not unduly restrict the construction of these towers. The result is a "perfect storm"

redeveloped in the suburbs, local officials and zoning boards made decisions to regulate and control the land density in accordance with desired local health, safety and welfare standards…The land could be zoned for purposes of single-family or multi-family residential housing, commercial property or light industrial.").

[2] Robert S. Ryan, *Pennsylvania Zoning Law and Practice*, § 1.2.2. (noting that the zoning hearing board reviews appeals from the municipal zoning officer's denial of permits, hears requests for special exceptions and variances, and may declare a zoning provision invalid).

for conflict because there is a direct correlation between a ham's antenna height and an ability to properly transmit signals.[3] The Federal Communications Commission ("FCC") regulation 47 C.F.R. § 97.15(b) concerns amateur radio service. The applicable portion of the FCC's regulation explains that:

> Except as otherwise provided herein, a station antenna structure may be erected at heights and dimensions sufficient to accommodate amateur service communications. (State and local regulation of a station antenna structure must not preclude amateur service communications. Rather, it must reasonably accommodate such communications and must constitute the minimum practicable regulation to accomplish the state or local authority's legitimate purpose. See PRB–1, 101 FCC 2d 952 (1985) for details.)[4]

As indicated by the language of this regulation, the FCC ruling, PRB-1, must be examined to obtain a more complete understanding of the regulation's application.

The FCC issued PRB-1 in 1985 in an attempt "to strike a balance between the federal interest in promoting amateur operations and the legitimate interests of local governments in regulating local zoning matters."[5] Indeed, this ruling weighs local government, federal government, and amateur radio operator interests, and has a limited, rather than complete, federal preemptive effect on local zoning ordinances. Thus, a zoning ordinance is preempted when a local municipality fails to apply the land use regulation in a manner that reasonably accommodates amateur communications. The federal courts that have interpreted PRB-1 have upheld this preemptive effect.[6]

---

[3] *Pentel v. City of Mendota Heights*, 13 F.3d 1261, 1263 (8th Cir.1994).

[4] 47 CFR § 97.15(e).

[5] PRB–1 ¶ 22.

[6] *See, e.g., Evans v. Bd. of Cnty. Comm'rs of Cnty. of Boulder*, 994 F.2d 755, 760–61 (10th Cir.1993); *Thernes v.*

In publishing PRB-1, the FCC did not specify a minimum height below which local governments must allow for radio towers. Rather, as the FCC has explained, PRB-1 provides that "local regulations which involve placement, screening, or height of antennas based on health, safety, or aesthetic considerations must be crafted to accommodate reasonably amateur communications, and to represent the minimum practicable regulation to accomplish the local authority's legitimate purpose."[7]

Notwithstanding PRB-1's somewhat vague language, several principles emerge. First, local municipalities must reasonably accommodate amateur communications. Second, zoning ordinances should be the *minimum* practicable restrictions which accomplish the local municipalities' legitimate purposes. Third, local municipalities may not ban all amateur communications towers. Finally, the FCC has explicitly declined to regulate the specific permissible heights for antenna towers.

## II.

DePolo's property is an $R^{1/2}$ residential zoning district. On November 25, 2013, DePolo submitted an application to the Township zoning officer requesting a building permit to construct a 180-foot tower on his property. His application was denied by the zoning officer who concluded that Section 208-18(G) of the zoning ordinance limited structures in the R½ Residence Zoning District to 35-feet.[8] Notwithstanding that restriction, however, the zoning officer offered DePolo a permit to construct a 65-foot tower. DePolo rejected this proposal and appealed the denial of his application to the ZHBA.

---

*City of Lakeside Park*, 779 F.2d 1187, 1188–89 (6th Cir.1986) (per curiam); *Williams v. City of Columbia*, 906 F.2d 994, 998 (4th Cir.1990); *Howard v. City of Burlingame*, 937 F.2d 1376, 1380 (9th Cir.1991); *Pentel*, 13 F.3d at 1261.

[7] PRB-1, 101 FCC 2d 952, 960 Fed.Reg. (1985).

[8] Tredyffrin Zoning Ordinance, § 208-18, 19(G). § 208-113. "Area, bulk and height regulations relating to dwellings: The height of any building shall not exceed 35 feet."

His appeal was accompanied by a variance application in which he asked the ZHBA to allow him to engage in an activity that was otherwise prohibited by the zoning ordinance.[9] DePolo's variance application, if granted, would have allowed him to erect a tower that exceeded the height restriction in the ordinance.[10] The ZHBA held hearings over a total of five days between March and June 2014. During those hearings, DePolo offered expert reports and testimony to support his contention that the zoning officer erred in refusing to issue the requested permit. He offered the testimony to support his claim that, because of the surrounding topography, he needed an antenna tower of 180-feet to be able to ensure reliable radio communications.

At the conclusion of the hearings, on October 23, 2014, the ZHBA granted DePolo a variance for a 65-foot tower, even though he withdrew his application for a variance prior to the conclusion of the ZHBA hearing. The ZHBA concluded that DePolo's proposed 180-foot tower was "not compatible" with the surrounding residential neighborhood and would create an adverse visual impact on the neighborhood. The ZHBA also concluded that the tower's "height, mass, and latticework design" was "of a type universally associated with. . . a factory area or industrialized complex" and posed a safety hazard to neighboring properties because its fall radius extended well into those properties.

---

[9] While landowners are ordinarily not permitted to violate perfectly valid land use regulations, the variance is a necessary legal mechanism to respond to imperfect topographical conditions that the ordinance does not adequately address. A variance in Pennsylvania, where DePolo's claim arises, is usually granted if the landowner establishes by evidence that (1) the physical features of the property are such that it cannot be used for a permitted purpose; or (2) that the property can be conformed for a permitted use only at a prohibitive expense; or (3) that the property has no value for any purpose permitted by the zoning ordinance. *Hertzberg v. Zoning Board of Adjustment of the City of Pittsburgh*, 554 Pa. 249, 721 A.2d 43 (1998).
[10] Robert S. Ryan, *Pennsylvania Zoning Law and Practice*, § 1.2.1.

While acknowledging that the PRB-1 still gave local municipalities authority to regulate the height of structures, the ZHBA noted that the municipality may forbid the construction and installation of antennas that are associated with those found in a factory area or an industrialized complex.[11] The ZHBA also noted that a 180-foot tower greatly exceeds the height of the residences in the area.[12] The ZHBA explained its rejection of DePolo's preemption claim as follows:

> Regardless, where the height limitations of the Zoning Ordinance are not absolute and can, by the very language of the Zoning Ordinance and the Pennsylvania Municipalities Planning Code, be varied or modified, they cannot be considered absolute or unvarying. Therefore, §208-18.G of the Zoning Ordinance is not invalid.

Rather than appeal that decision to the Chester County Court of Common Pleas as provided under the state regulatory scheme, DePolo filed this suit in federal court. He now claims that the ZHBA's 65-foot variance and the zoning ordinance's fixed and firm height restriction of 35-feet, as enacted and as applied, was preempted by PRB-1.

The BOS and the ZHBA moved to dismiss DePolo's suit for failure to state a claim. The District Court agreed and granted the motions. It held that the Township's proposed 65-foot variance was a valid and reasonable accommodation for DePolo's 180-foot tower request and held that the Township's local zoning ordinance was not preempted by

---

[11] In the Matter of Modification and Clarification of Policies and Procedures Governing Siting and Maintenance of Amateur Radio Antennas and Support Structures, and Amendment of Section 97.15 of the Commission's Rules Governing the Amateur Radio Service, 15 F.C.C.R 22151, 22154 (F.C.C. 2000).

[12] The ZHBA stated that "to the extent that the Zoning Officer did not have the authority to grant a permit for a tower 65 feet in height, the Zoning Hearing Board does have such authority and hereby grants said permit for a 65 ft. tower."

PRB-1. The District Court was also troubled by DePolo's insistence that a 180-foot tower was necessary to satisfy the FCC's reasonable accommodation requirements, and exhorted the "parties to work together to arrive at a satisfactory solution."[13]  No such solution was achieved. This appeal followed.

### III.

We have jurisdiction pursuant to 28 U.S.C. § 1291. A District Court's dismissal of a complaint under Rule 12(b)(6) is reviewed *de novo*.[14] Accordingly, we assume the truth of the factual allegations and draw every reasonable inference in favor of DePolo. We have yet to consider the effect of PRB-1 on local land use disputes. Moreover, this is the first time in the 30-year history of PRB-1 that a District Court has dismissed a preemption claim under § 97.15(b) pursuant to Fed. R. Civ. P. 12(b)(6).

Although we have not decided a PRB-1 preemption claim, we touched upon it in *Izzo v. Borough of River Edge*, 843 F.2d 765 (3d Cir. 1988).  There, an amateur radio operator brought action against the Borough of River Edge, its zoning officer, and members of the planning board, challenging the legality of the prohibition of a 40-foot transmission tower. The United States District Court for the District of New Jersey abstained under *Burfod v. Sun Oil Co.*,[15] and we held that abstention was improper.  We explained that abstention was unnecessary because land use regulation was not so technical that it required the District Court to enmesh itself in a highly specialized local regulatory scheme.  Although DePolo suggests that we should decide this case on the merits and hold that a 12(b)(6) dismissal is

---

[13] *Pentel*, 13 F.3d at 1266.

[14] *Schmidt v. Skolas*, 770 F.3d 241, 248 (3d Cir. 2014).

[15] 319 U.S. 315, 334 (1943) (rather than a federal court becoming enmeshed in an intricate state regulatory scheme, "equitable discretion of the federal courts should be exercised to give [the state] courts the first opportunity to consider it[]" because "sound respect for the independence of state action requires the federal equity court to stay its hand.").

simply not appropriate here, the procedural posture of this case precludes our review of the merits of his claims.

We have explained that "in determining whether a litigant has been given a 'full and fair' opportunity to litigate a claim, we must take into account the possibility of appellate review" because a full and fair opportunity to litigate "includes the possibility of a chain of appellate review."[16] The ZHBA is a state administrative agency acting in a quasi-judicial capacity. It resolved this dispute by issuing a written determination containing final findings of fact and conclusions of law. While DePolo was aggrieved by the ZHBA's decision limiting the variance to 65-feet, he had adequate opportunity to litigate the matter beyond the ZHBA by appealing to the appropriate Court of Common Pleas within thirty days of the ZHBA's decision.[17] Rather than do that, DePolo filed this suit in the District Court, and allowed the thirty-day appeal period under state law to expire. This was fatal to his ability to obtain federal review of his claim.[18]

---

[16] *Crossroads Cogeneration Corp. Orange & Rockland Utils., Inc.,* 159 F.3d 129, 137 (3rd Cir. 1998).

[17] 53 Pa.C.S. § 11002-A ("All appeals from all land use decisions . . . shall be taken to the court of common pleas of the judicial district wherein the land is located."); *See also* Dickinson, *Inclusionary Eminent Domain* 873 (discussing the appeal process, noting that a developer or landowner whose permit or variance request is denied may appeal the local zoning board's decision in state court.).

[18] We acknowledge that this decision leaves amateur radio enthusiasts with limited avenues into federal court. DePolo could have appealed the ZHBA's decision and stayed the matter in state court, while his federal claims were resolved. That would have allowed the District Court to narrowly address the question of preemption. *Eichenlaub v. Twp. of Indiana*, 385 F.3d 274, 285 (3d Cir. 2004); *See, e.g., MacMillan v. City of Rocky River*, 748 F. Supp. 1241, 1244 (N.D. Ohio 1990) (radio-operator plaintiff appealed zoning board decision, secured stay, and filed federal complaint to resolve preemption claim); *Chedester v. Town of Whately*, 279 F.Supp.2d 53 (2003)(amateur radio enthusiast brought suit in both state and federal court simultaneously and District Court decided to wait until the state court had ruled).

DePolo actually withdrew his request for a variance before the ZHBA and then failed to challenge its factual findings or legal conclusions in the forum provided under state law. He is therefore now bound by the final judgment of the ZHBA.[19] Its ruling is a final judgment on the merits that is entitled to preclusive effect in federal court.[20] Accordingly, we will dismiss this appeal.

---

Alternatively, the FCC has enforcement powers, conferring jurisdiction on the District Courts of the United States "upon application of the Attorney General of the United States at the request of the Commission, alleging a failure to comply with or a violation of any of the provisions." 47 U.S.C. § 401.

[19] *Ridley Sch. Dist. v. M.R.*, 680 F.3d 260, 283 (3d Cir. 2012).

[20] *Id. See Crossroads Cogeneration Corp.*, 159 F.3d at 135 (noting that "factual findings of state agencies should be given the same preclusive effect they would be accorded in the courts of that state.")(citing *Elliott,* 478 U.S. at 797); *Edmundson,* 4 F.3d at 189 ("Decisions of state administrative agencies that have been reviewed by state courts are…given preclusive effect in federal courts."); *Caver v. City of Trenton,* 420 F.3d 243, 259 (3d Cir.2005).