UNITED STATES of America, Plaintiff,

v.

The CITY AND COUNTY OF DENVER, COLORADO, and Dorothy Nepa, in her official capacity as Administrator of the Department of Zoning Administration of the City and County of Denver, Defendants.

Civil Action No. 94–D–2004.

United States District Court, D. Colorado.

Feb. 22, 1996.

Daniel W. Pinkston, Katherine A. Dreyfus, U.S. Department of Justice, Washington, DC, Linda A. Surbaugh, Assistant U.S. Attorney, Denver, CO, George B. Wyeth, Office of General Counsel, U.S.E.P.A., Washington, DC, Wendy Silver, Office of Regional Counsel, U.S.E.P.A., Denver, CO, for Plaintiff.

T. Shaun Sullivan, Robert M. Kelly, Thomas Bigler, Denver, CO, for Defendants.

## ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANTS' CROSS–MOTION FOR SUMMARY JUDGMENT

DANIEL, District Judge.

### I. INTRODUCTION

This matter is before the Court on the motion for summary judgment of plaintiff United States of America ("United States") and the cross-motion for summary judgment filed by defendants City and County of Denver and Dorothy Nepa, in her official capacity as Administrator of the Department of Zoning Administration of the City and County of Denver (collectively, "Denver"). After reviewing the motions and briefs submitted by the parties, and after oral argument, the Court finds that there are no genuine issues of material fact and that the United States is entitled to judgment as a matter of law. Therefore, the Court GRANTS the United States' motion for summary judgment, and DENIES Denver's cross-motion for summary judgment. The Court makes the following findings of fact and conclusions of law:

### II. FINDINGS OF FACT

1. The "Denver Radium Superfund Site" was placed on the National Priorities List on September 8, 1983.

2. The United States Environmental Protection Agency ("EPA") divided the Denver Radium Superfund Site into eleven "operable units," including "Operable Unit VIII" ("OU VIII"). OU VIII is basically comprised of three areas: (a) a parcel of approximately 5.9 acres located at 1805 Bannock Street in Denver, Colorado, owned by The S.W. Shattuck Chemical Co., Inc. ("Shattuck"); (b) a railroad right-of-way, running along the western boundary of the Shattuck parcel, of about 4.3 acres; and (c) certain properties in the immediate vicinity to the north and east of the Shattuck parcel.

3. Except for OU VIII, the selected remedy at the other operable units of the Denver Radium Superfund Site was basically excavation and permanent offsite disposal.

4. The Colorado Department of Health, with a grant from EPA, prepared a Final Remedial Investigation Report and a Final Feasibility Study for OU VIII, which were issued, after public comment, in September 1991. The Final Remedial Investigation Report indicated that soils and groundwater at OU VIII were radiologically contaminated. Contaminated groundwater flows under OU VIII and under the Overland Golf Course in the direction of the South Platte River.

5. The Final Feasibility Study considered seven different remedial alternatives for OU VIII. Alternative V, the remedy ultimately chosen for OU VIII, involves demolition of the buildings on the Shattuck parcel; relocation of contaminated soils from the railroad right-of-way and the vicinity properties to the Shattuck parcel; mixing the contaminated soils with cement, fly ash and silica powder; and burying the resulting concrete-like material on the Shattuck parcel under a compacted soil cap. The Final Feasibility Study also discussed Alternative VI, the preferred alternative in the proposed remediation plan discussed *infra*, which would involve clearing the buildings off the site, sending all of the contaminated soils from the railroad right-of-way, the vicinity properties and the Shattuck

parcel off-site for disposal, and backfilling the Shattuck parcel with clean fill dirt.

6. In April 1991, the Colorado Department of Health issued a proposed remediation plan for public comment. The proposed plan identified Alternative VI, excavation and permanent offsite disposal, as the preferred remedy, and sought public comment on the preferred alternative as well as the other six alternatives. The public comment period ran through May 1991.

7. The City and County of Denver submitted a number of comments on the proposed remedial alternatives. None of those comments, however, claimed that Alternative V, the soil stabilization and solidification remedy, would violate Denver's zoning ordinances with respect to OU VIII (the Shattuck parcel). Denver supported the selection of Alternative VI (excavation and off-site disposal of contaminated soils).

8. On January 28, 1992, EPA and the Colorado Department of Health issued a final "Record of Decision" ("ROD") for OU VIII, which selected Alternative V as the remedial method.

9. Effective August 31, 1992, EPA Region VIII issued an "Administrative Order for Remedial Design/Remedial Action" ("EPA Order") to Shattuck under section 106(a) of the Comprehensive Environmental Response, Compensation, and Liability Act of 1980 ("CERCLA"), 42 U.S.C. § 9606(a), requiring Shattuck to perform the remedial action for OU VIII. By terms of the EPA Order and CERCLA, Shattuck is subject to civil penalties of up to $25,000 per day for willful violation or failure to comply with the EPA Order, and may be subject to punitive damages under section 107(c)(3) of CERCLA, 42 U.S.C. § 9607(c)(3) for such failure. To date, the United States has not enforced these provisions against Shattuck.

10. Shattuck agreed to comply with the EPA Order, and began performing the remediation, including demolition of the buildings on the Shattuck parcel and relocation of contaminated soils from the railroad right-of-way and the vicinity properties to the Shattuck parcel (Phase I work) in antici-pation of subsequent soil stabilization (Phase II work).

11. On or about September 2, 1993, EPA issued an amendment to the EPA Order, allowing Phase I work to proceed, and suspending the majority of the Phase II work. On or about February 16, 1994, EPA issued an amendment to the EPA Order, allowing all Phase II work to proceed.

12. On May 11, 1994, Shattuck was served with an "Order to Cease and Desist" ("Cease and Desist Order") by Denver, which stated violations of sections 59–26 ("No land shall be used or occupied and no structure shall be designed, erected, altered, used or occupied except in conformity with all regulations herein established and upon performance of all conditions herein set forth.") and 59–409 of the Denver Zoning Ordinance, Revised Municipal Code §§ 59–26, 59–409. As to § 59–409, the Cease and Desist Order stated that "PERMITTED AND CONDITIONAL USES IN THE I–2 ZONE NOT [sic] INCLUDE A RADIOACTIVE DISPOSAL OR DUMP SITE. A radioactive waste disposal or dump site is being maintained on the above zone lot in violation of cited section." The Cease and Desist Order required Shattuck to "cease and desist" from the claimed violations on or before June 11, 1994. The Order further stated that "[i]f you have not complied, you will be subject to the penalties established by the Revised Municipal Code of the City and County of Denver." The Cease and Desist Order thus required Shattuck to cease performing the remediation required by the terms of the EPA Order. Under the Revised Municipal Code, every day that a zoning violation remains in place is a separate violation, and violations of the zoning ordinance are strict liability offenses. Revised Municipal Code § 59–27. Violators are subject to civil and criminal penalties. Revised Municipal Code § 59–28(a).

13. Shattuck thereafter ceased its performance of that part of the remedial action relating to the treatment of contaminated soils.

14. On or about June 10, 1994, Shattuck filed an appeal of the Cease and Desist Order with the Denver Board of Adjustment for

Zoning Appeals ("Board of Adjustment"). After a hearing before the Board of Adjustment on October 26, 1994, the Board upheld the Cease and Desist Order. Shattuck did not appeal the Board of Adjustment's decision to the District Court for the City and County of Denver.

15. On August 29, 1994, the United States filed a Complaint for Declaratory and Injunctive Relief against defendants City and County of Denver and Dorothy Nepa, in her official capacity as the Administrator of the Department of Zoning Administration of the City and County of Denver.

16. The United States alleged two claims for relief in its Complaint. In its First Claim for Relief, the United States alleged that the Cease and Desist Order is void and unenforceable under the Supremacy Clause of the United States Constitution, Article VI, Clause 2, because (a) there is a direct conflict between the ROD and the EPA Order on the one hand, and the Cease and Desist Order on the other hand, and (b) the Cease and Desist Order is an obstacle to the full purposes and objectives of federal law. The Second Claim for Relief stated that the Cease and Desist Order is invalid and inapplicable to Shattuck's performance of the OU VIII remedial action since it was in conflict with the provisions of section 121(e)(1) of CERCLA, 42 U.S.C. § 9621(e)(1).

17. In its Complaint, the United States sought a declaratory judgment that the Cease and Desist Order is void and unenforceable in violation of the Supremacy Clause; a declaratory judgment that the Cease and Desist Order is invalid and unenforceable pursuant to section 121(e)(1) of CERCLA, 42 U.S.C. 9621(e)(1); and a permanent injunction against Denver, prohibiting it from attempting to enforce the Denver Zoning Ordinance against Shattuck or its contractors with regard to the performance of the remedy selected in the ROD and/or as ordered in the EPA Order.

18. On October 3, 1994, Denver filed a motion to dismiss, alleging that the Court should abstain from deciding the case, that the case was not ripe for adjudication, and that an indispensable party had not been joined. Denver later withdrew the ripeness argument. After briefing and oral argument, Denver's motion to dismiss was denied on October 13, 1995.

19. Denver thereafter filed an Answer and Counterclaims, in which it sought a declaratory judgment that CERCLA does not preempt Denver's prohibition on radioactive waste sites in I-2 zoning districts, that the United States had not met what Denver asserted were the threshold requirements of section 121 of CERCLA, 42 U.S.C. § 9621, that would allow the United States, in Denver's view, to avoid the application of Denver's substantive law and permitting requirements, and that any remedial action the United States performs or has performed at OU VIII must comply with Denver's law. Denver further requested a permanent injunction prohibiting the United States from performing, ordering, or agreeing to allow another to perform, or enforcing an order to perform, a remedial action that does not comply with Denver's laws. These counterclaims are essentially the opposite of the claims for relief set forth in the United States' Complaint.

20. The United States filed a Motion for Summary Judgment and Memorandum Brief in Support on January 3, 1995. Denver filed its Cross-Motion for Summary Judgment and Brief in Response to Plaintiff's Motion for Summary Judgment on February 1, 1995. The United States filed a Reply Brief in support of its motion and in opposition to Denver's cross-motion for summary judgment on February 23, 1995. Finally, on March 16, 1995, Denver submitted a reply brief in support of its cross-motion for summary judgment and surreply in response to the United States' motion for summary judgment.

21. The Court held a hearing on the pending cross-motions for summary judgment on January 23, 1996, at which time it heard oral argument by counsel for the United States and for Denver.

### III. *CONCLUSIONS OF LAW*

1. Summary judgment is appropriate where there is no genuine issue of material fact and the moving party is entitled to judg-

ment as a matter of law. Fed.R.Civ.P. 56(c); *Ash Creek Mining Co. v. Lujan,* 934 F.2d 240, 242 (10th Cir.1991). The Court finds that there are no genuine issues of material fact and that the United States is entitled to judgment in its favor as a matter of law.

■ 2. The Supremacy Clause of the United States Constitution, Article VI, Clause 2, invalidates state laws that interfere with or are contrary to federal law. *Hillsborough County v. Automated Medical Labs, Inc.,* 471 U.S. 707, 713, 105 S.Ct. 2371, 2375, 85 L.Ed.2d 714 (1985).[1]

■ 3. State or local law may be preempted by federal regulations as well as by federal statutes. *Capital Cities Cable, Inc. v. Crisp,* 467 U.S. 691, 699, 104 S.Ct. 2694, 2700, 81 L.Ed.2d 580 (1984); *Evans v. Board of County Comm'rs,* 994 F.2d 755, 760 (10th Cir.1993). EPA consent decrees, *United States v. Akzo Coatings of America, Inc.,* 949 F.2d 1409, 1454 (6th Cir.1991), and administrative orders may also preempt state or local law. *Feikema v. Texaco, Inc.,* 16 F.3d 1408, 1416 (4th Cir.1994).

■ 4. There are three basic situations which would involve federal preemption of state or local law:

a. Where Congress has expressly preempted state or local law ("express preemption");

b. Where the scheme of federal regulation is so comprehensive as to make it a reasonable inference that Congress intended to occupy the field ("field preemption");

c. Where Congress has not completely displaced state or local law, but there is an actual conflict between the federal and state or local law, the federal law prevails in two situations: (i) where the two schemes make it "a physical impossibility" to comply with both the federal and state/local regulations, *Florida Lime & Avocado Growers, Inc. v. Paul,* 373 U.S. 132, 142–43, 83 S.Ct. 1210, 1217–18, 10 L.Ed.2d 248 (1963), or (ii) because the state or local law "stands as an

obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Hines v. Davidowitz,* 312 U.S. 52, 67, 61 S.Ct. 399, 404, 85 L.Ed. 581 (1941).

■ 5. Neither "express" nor "field preemption" is applicable in this case. The Court **concludes** that CERCLA section 121(e)(1), 42 U.S.C. § 9621(e)(1), does not provide "a reliable indicium of congressional intent with respect to state authority," *Cipollone v. Liggett Group, Inc.,* 505 U.S. 504, 517, 112 S.Ct. 2608, 2618, 120 L.Ed.2d 407 (1992), and thus does not constitute an express preemption provision which would preclude the application of the Supremacy Clause to invalidate state or local action that conflicts with federal statutes, regulations or orders.

6. It is physically impossible for Shattuck to comply with both the ROD and the EPA Order, and also the Cease and Desist Order. Shattuck has been specifically ordered by EPA, pursuant to CERCLA section 106, 42 U.S.C. § 9606, to perform the remedial action selected by EPA and the State of Colorado in the ROD. Under section 106(b) of the CERCLA, 42 U.S.C. § 9606(b), and the terms of the EPA Order, Shattuck is subject to civil penalties of not more than $25,000 per day for each day in which it "willfully violates, or fails or refuses to comply with this Order without sufficient cause." EPA Order at ¶ 73. In addition, if Shattuck fails to take proper action, it could be liable for punitive damages of three times the amount of costs incurred by the Superfund as a result of the failure. CERCLA section 107(c)(3), 42 U.S.C. § 9607(c)(3). The Denver Cease and Desist Order specifically requires Shattuck to halt performance of the remedy. It is literally impossible for Shattuck to both perform the remedy as required by the EPA Order, and to not perform that remedy as required by the Denver Cease and Desist Order.

7. In addition, the Cease and Desist Order stands as an obstacle to the full purposes

---

1. The Supremacy Clause states as follows:
   This Constitution, and the Laws of the United States which shall be made in Pursuance thereof; and all Treaties made, or which shall be made, under the Authority of the United

States, shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding.

and objectives of Congress. The full effectiveness of federal law (in this case, CERCLA, the ROD and the EPA Order) is frustrated by the Cease and Desist Order, since the Cease and Desist Order operates to stop a remedy chosen in the ROD and to be performed pursuant to the EPA Order.

8. The ROD was prepared in accordance with the procedures established by CERCLA; therefore, this Court cannot look behind the record of decision. The ROD was promulgated in conformity with federal law, and EPA had authority under CERCLA to issue the EPA Order to Shattuck.

9. Pursuant to CERCLA section 113(h), 42 U.S.C. § 9613(h), the Court lacks subject matter jurisdiction to consider Denver's challenge to the ROD.

10. The Court concludes as a matter of law that the Cease and Desist Order is void and unenforceable pursuant to the Supremacy Clause because it is in direct conflict with the ROD and the EPA Order, and because it is an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.

11. This result makes it unnecessary to consider the United States' Second Claim for Relief regarding CERCLA section 121(e)(1), 42 U.S.C. § 9621(e)(1).

Accordingly, IT IS ORDERED,

A. The United States' Motion for Summary Judgment is GRANTED, and the Court enters a declaratory judgment that the Cease and Desist Order is invalid and unenforceable pursuant to the Supremacy Clause of the United States Constitution.

B. The Defendants are permanently enjoined from attempting to enforce the Denver Zoning Ordinance against Shattuck or its contractors with regard to the performance of the remedy selected in the ROD and/or as ordered in the EPA Order.

C. Defendants' cross-motion for summary judgment is DENIED, and the counterclaims are dismissed with prejudice.

D. Each party shall bear its own costs.