Richard CHEDESTER, Plaintiff

v.

**TOWN OF WHATELY, et al., Defendants**

**No. CIV.A. 03–30002–FHF.**

United States District Court, D. Massachusetts.

Aug. 25, 2003.

**54**

Joel B. Bard, Patricia A. Cantor, Kopelman & Paige, PC, Boston, for Town of Whately, Defendant.

John Jakobek, Easthampton, MA, for Edward H. Berman, Defendant.

Alan Seewald, Seewald & Jankowski, Amherst, MA, for Richard Chedester, Plaintiff.

*MEMORANDUM AND ORDER WITH REGARD TO DEFENDANTS' MOTION TO STAY (Document No. 13)*

NEIMAN, United States Magistrate Judge.

This case concerns a decision by the Town of Whately ("the Town") to revoke a permit issued to Richard Chedester ("Plaintiff") for the construction on his property of an amateur radio tower and supporting structure. Plaintiff's complaint—which targets the Town, including its Planning Board and Zoning Board of Appeals ("ZBA"), along with two of Plaintiff's abutters, Edward and Julia Berman ("the Bermans") (collectively "Defendants")—purports to appeal the zoning decision pursuant to Mass. Gen. L. ch. 40A,

§ 17, and seeks declaratory relief. The Bermans' motion to stay the proceedings, which the Town has joined, has been referred to this court. *See* 28 U.S.C. § 636(b)(1)(A). For the reasons which follow, the court will allow the motion.

### I. BACKGROUND

Plaintiff is licensed by the Federal Communications Commission ("FCC") as both an amateur radio operator and a private, noncommercial amateur radio station owner. (Complaint ¶ 11.) On August 14, 2002, Plaintiff applied for a permit from the Town for the construction of an amateur radio tower and supporting structure on ten acres of heavily-wooded land which he owns jointly with his wife and which abuts the Bermans' property. (*Id.* ¶¶ 10, 12–13.) Plaintiff's proposed edifice would be 140 feet in height and located about 500 feet from both Haydenville Road and Plaintiff's nearest residential neighbor. (*Id.* ¶ 14.) The Town's building inspector issued the permit on August 21, 2002.

On October 28, 2002, the Bermans and the Planning Board independently filed appeals to the ZBA with respect to the issuance of the permit. (*Id.* ¶¶ 15–16.) After holding hearings on November 21 and December 5, 2002, the ZBA revoked the permit, concluding that Plaintiff's proposed support structure exceeded a 35 foot height limit contained in section 171–9(C) of the Town's Zoning Bylaw ("the bylaw"). (*Id.* ¶¶ 17–19.) [1]

On January 3, 2003, Plaintiff sued Defendants in the Massachusetts Superior Court, *see Chedester v. Town of Whately,*

---

1. In pertinent part, the bylaw provides as follows:

    Height regulations. No building or structure shall exceed a maximum height of 35 feet, measured from the highest point of the roof to the average finished ground grade on the premises. Measurements shall not include antennas, chimneys or any other permitted accessory which is not intended for human habitation. Height restrictions do not apply to agricultural uses, municipal buildings and churches.

    (*Id.,* Exhibit G.)

Civil Docket No. FRCV2003–00002 (a copy of the complaint is attached to Defendants' Motion), and, simultaneously, filed the instant action. The state and federal lawsuits are virtually identical. In both, Plaintiff attempts to "appeal" the Town's decision pursuant to Mass. Gen. L. ch. 40A, § 17 ("section 17").[2] Moreover, both actions seek declaratory judgments that the bylaw is in conflict with and preempted by federal law—i.e., 47 C.F.R. § 97.15(b) (2003) ("section 97.15(b)")—and is in violation of Mass. Gen. L. ch. 40A, § 3 ("section 3").[3] The only difference appears to be that the state action purportedly arises under Massachusetts' declaratory judgment statute, Mass. Gen. L. ch. 231A, § 1 et seq., whereas the instant action purportedly arises under the federal Declaratory Judgment Act ("DJA"), 28 U.S.C. § 2201 et seq., and Fed.R.Civ.P. 57.

On April 30, 2003, the Bermans, later joined by the Town, filed the present motion to stay the proceedings pending final judgment in the state court action. Oral argument on the motion was held on July 23, 2003.

## II. *DISCUSSION*

Defendants argue that a stay would avoid duplicative litigation, allow the state court to have the initial opportunity to consider the state-based facets of the dispute, and potentially moot Plaintiff's federal claims. Defendants also note that the state action is on a "fast track" and thereby given priority over most other civil cases. For his part, Plaintiff contends that the present action is controlled by federal law and, therefore, ought not be stayed. For the following reasons, the court deems Defendants to have the stronger argument.

### A. *Legal Standards*

As the parties recognize, the DJA gives the court the authority, "[i]n a case of actual controversy within its jurisdiction," to "declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201. The DJA is designed to enable parties "to clarify legal rights and obligations before acting upon them." *Ernst & Young v. Depositors Econ. Protection Corp.*, 45 F.3d 530, 534 (1st Cir.1995) (citing *Step–Saver Data Sys., Inc. v. Wyse Tech.*, 912 F.2d 643, 649–50 (3d Cir.1990) (in turn, citing legislative history)). The DJA "is mirrored by" Rule 57 and, as such, "[t]he statute and the rule are functionally equivalent." *Ernst & Young*, 45 F.3d at 534 n. 8 (citation omitted).

The DJA, however, "neither imposes an unflagging duty upon the courts to decide

---

**2.** In pertinent part, section 17 states that "[a]ny person aggrieved by a decision of [a local zoning] board of appeals ... may appeal to the land court department [or] the superior court department in which the land concerned is situated ...." Mass. Gen. L. ch. 40A, § 17.

**3.** Section 97.15(b), promulgated pursuant to the Federal Communications Act of 1934, as amended, 47 U.S.C. § 151 et seq., provides, in pertinent part, as follows: "State and local regulation of a station antenna structure must not preclude amateur service communications. Rather, it must reasonably accommo-date such communications and must constitute the minimum practicable regulation to accomplish the state or local authority's legitimate purpose." 47 C.F.R. § 97.15(b) (2003). Similarly, section 3 provides that "[zoning] ordinances and by-laws [must] reasonably allow for sufficient height of such antenna structures so as to effectively accommodate amateur radio communications by federally licensed amateur radio operators and constitute the minimum practicable regulation necessary to accomplish the legitimate purposes of the city or town enacting such ordinance or by-law." Mass. Gen. L. ch. 40A, § 3.

declaratory judgment actions nor grants an entitlement to litigants to demand declaratory remedies." *El Dia, Inc. v. Hernandez Colon,* 963 F.2d 488, 493 (1st Cir. 1992) (citing, inter alia, *Green v. Mansour,* 474 U.S. 64, 72, 106 S.Ct. 423, 88 L.Ed.2d 371 (1985)). Indeed, the Supreme Court has specifically held that the DJA "is an enabling Act, which confers a discretion on the courts rather than an absolute right upon the litigants." *Green,* 474 U.S. at 72, 106 S.Ct. 423. For its part, the First Circuit has indicated that a court should exercise its DJA discretion only after considering "the totality of the circumstances." *Id.* at 494.

A court's decision to exercise DJA jurisdiction may be informed by the action's nexus to a pending state matter. As the Supreme Court explained in *Brillhart v. Excess Ins. Co. of Am.,* 316 U.S. 491, 62 S.Ct. 1173, 86 L.Ed. 1620 (1942), "[o]rdinarily it would be uneconomical as well as vexatious for a federal court to proceed in a declaratory judgment suit where another suit is pending in a state court presenting the same issues, not governed by federal law, between the same parties." *Id.* at 495, 62 S.Ct. 1173. The issue for a district court presented with such a situation, the Court explained, is to determine "whether the questions in controversy between the parties to the federal suit, and which are not foreclosed under the applicable substantive law, can better be settled in the proceedings pending in the state court." *Id.* In making such a determination, the Court continued, a court may need to examine "the scope of the pending state court proceeding and the nature of defenses open there," an inquiry which naturally entails consideration of "whether the claims of all parties in interest can satisfactorily be adjudicated in that proceeding, whether necessary parties have been joined, whether such parties are amenable to process in that proceeding, etc." *Id.*

Indeed, the Court noted, a court might be indulging in "[g]ratuitous interference" if it permitted a federal declaratory action to proceed when the parties have sufficient opportunity to resolve the issue in a pending state court action. *See id.*

Confirming the viability of *Brillhart,* the Supreme Court in *Wilton v. Seven Falls Co.,* 515 U.S. 277, 115 S.Ct. 2137, 132 L.Ed.2d 214 (1995), rejected a claim that a district court should stay or dismiss a declaratory judgment only in "exceptional circumstances." *Id.* at 286, 115 S.Ct. 2137. The court held that "[d]istinct features of the [DJA] . . . justify a standard vesting district courts with greater discretion in declaratory judgment actions than that permitted under the 'exceptional circumstances' test of *Colorado River [Water Conservation Dist. v. United States,* 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976),] and *Moses H. Cone [Mem'l Hosp. v. Mercury Const. Corp.,* 460 U.S. 1, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983) ]." *Id.* As the Court explained:

> By the [DJA], Congress sought to place a remedial arrow in the district court's quiver; it created an opportunity, rather than a duty, to grant a new form of relief to qualifying litigants. Consistent with the nonobligatory nature of the remedy, a district court is authorized, in the sound exercise of its discretion, to stay or to dismiss an action seeking declaratory judgment before trial or after all arguments have drawn to a close. In the declaratory judgment context, the normal principle that federal courts should adjudicate claims within their jurisdiction yields to considerations of practicality and wise judicial administration.

*Id.* at 288, 115 S.Ct. 2137 (footnote omitted).

## B. *Analysis*

█ To summarize the above standards, the court, in determining whether to exercise its broad discretion to stay this action pending the outcome of the parallel state matter, should compare the nexus between the two suits, considering the totality of the circumstances. As will be discussed, the arguments Defendants proffer lead the court, in the end, to believe that the instant action should be stayed.

Initially, the court recognizes that there is some merit to Plaintiff's position. As indicated, *Brillhart* counsels that a stay is usually proper only where the related state suit presents issues "not governed by federal law." *Id.*, 316 U.S. at 495, 62 S.Ct. 1173. Here, Plaintiff argues that the paramount legal question is federal—i.e., the application of section 97.15(b) to the bylaw—and that other federal courts have not hesitated to address such claims, particularly when the local ordinance absolutely prohibits antennas over a certain height. *See, e.g., Bodony v. Incorporated Village of Sands Point*, 681 F.Supp. 1009, 1013 (E.D.N.Y.1987) (striking down 25 foot height limit as applied to the plaintiff's radio antenna where local zoning board action was "devoid of any effort to make 'a reasonable accommodation ... between the two sides'"); *Bulchis v. City of Edmonds*, 671 F.Supp. 1270, 1274 (W.D.Wash.1987) (granting summary judgment to plaintiff seeking conditional use permit for 75 foot retractable radio antenna). Moreover, Plaintiff asserts, since there are no Massachusetts appellate decisions interpreting section 3—section 97.15's state law equivalent—the state court will be in the awkward position of having to rely on case law interpreting section 97.15.

█ Notwithstanding the superficial appeal of Plaintiff's position, the court believes, for a number of reasons, that the balance weighs in favor of staying the instant action. First, this court has no jurisdiction over one of Plaintiff's central claims, his purported "appeal" of the ZBA's decision. *See* Mass. Gen. L. ch. 40A, § 17 (vesting jurisdiction over zoning appeal, with exceptions not relevant here, only in "the land court department [or] the superior court department in which the land concerned is situated ..."). Accordingly, Plaintiff has no choice but to acknowledge that it is up to the state court to determine whether the ZBA's action "is based on a legally untenable ground, or is unreasonable, whimsical, capricious or arbitrary." *Roberts v. Southwestern Bell Mobile Sys., Inc.*, 429 Mass. 478, 709 N.E.2d 798, 804 (1999) (citations and internal quotation marks omitted).[4]

Second, Plaintiff's request for an interpretation of the bylaw in light of section 3, a Massachusetts statutory provision, is a matter best left to a state court. As the Supreme Court has explained, "[i]nterpretation of state legislation is primarily the function of state authorities, judicial and administrative." *Albertson v. Millard*, 345 U.S. 242, 244, 73 S.Ct. 600, 97 L.Ed. 983 (1953). If it is true, as Plaintiff himself indicates, that there has been no prior interpretation of section 3, then staying this action is even more appropriate. *See id.* (ordering stay of federal action where there had been no prior state interpretation of relevant state statute).

Of course, as Plaintiff argues, section 3 echoes the requirements of section 97.15(b)

---

4. Plaintiff claims that he initiated the state court action merely to protect himself from the short twenty-day limitations period for filing such an appeal. While that may be the case, Plaintiff cannot overcome the fact that this court has no jurisdiction over the zoning appeal itself.

and, thus, may require some consideration of federal standards. The FCC, however, has labeled "PRB–1"—the FCC memorandum and opinion on which section 97.15(b) is based and to which it refers—a "limited preemption policy" only. *See Evans v. Bd. of County Commissioners of the County of Boulder, Col.,* 994 F.2d 755, 760 (10th Cir. 1993). Thus, as Defendants point out, the plain language of section 97.15(b) itself leaves the initial regulation of amateur radio antenna structures to "state and local" authorities. 47 C.F.R. § 97.15(b) (2003). Similarly, PRB–1 states that the FCC "will not . . . specify any particular height limitation below which a local government may not regulate." PRB–1 (*Matter of Federal preemption of state & local regulations pertaining to Amateur radio facilities*) (1985), 101 F.C.C.2d 952, 1985 WL 544557 (F.C.C.). In short, given that the FCC has left the regulation of amateur radio antenna structures, in the first instance, to state and local authorities, albeit within certain general limits, this court believes it best to have the state court, in the first instance, determine whether the Town's bylaw comports with the state statute. *See Evans,* 994 F.2d at 761 (stating that "courts should proceed with caution when considering whether precise, specific local ordinances are preempted by vague federal regulations"); *Marchand v. Town of Hudson,* 147 N.H. 380, 788 A.2d 250, 253–54 (2001) (analyzing local ordinance in light of both state statutory law and PRB–1).

Third, staying the instant action at this time would avoid "piecemeal litigation," that is, "the implications and practical effects of litigating suits deriving from the same transaction in two separate fora." *KPS & Assocs., Inc. v. Designs by FMC, Inc.,* 318 F.3d 1, 10–11 (1st Cir.2003). As Defendants point out, resolution of the state law issues by the state court may well resolve the entire matter.

Fourth, and relatedly, a stay would doubtless promote "judicial economy" and "comity." *See Bath Mem'l Hosp. v. Maine Health Care Fin. Comm'n,* 853 F.2d 1007, 1013 (1st Cir.1988). Plaintiff's argument to the contrary, state courts, when appropriate, routinely deal with federal questions, *see, e.g., Lindsay v. Dep't of Social Servs.,* 439 Mass. 789, 791 N.E.2d 866, 871 n. 5 (2003); *Atlanticare Med. Ctr. v. Comm'r of Div. of Med. Assistance,* 439 Mass. 1, 785 N.E.2d 346, 350–56 (2003); *Russell v. Cooley Dickinson Hosp., Inc.,* 437 Mass. 443, 772 N.E.2d 1054, 1061–62 (2002), including, if necessary, the very kind of federal issue presented here, *see e.g., Brower v. Indian River County Code Enforcement Bd.,* 1993 WL 228785, at *2 (Fla.Cir.Ct. June 23, 1993) (voiding local ordinance prohibiting amateur radio towers as violative of federal law).

Finally, a stay eliminates difficulties which might arise should the federal action be dismissed outright, a result which Defendants presently do not seek. *See Wilton,* 515 U.S. at 288 n. 2, 115 S.Ct. 2137 (noting that a stay is often "the preferable course, because as it assures that the federal action can proceed without risk of a time bar if the state case, for any reason, fails to resolve the matter in controversy") (citation omitted). As Defendants recognize, there may aspects of the present litigation which are neither governed nor addressed by the state proceeding. Once the state action is resolved, the court can determine whether or not there are any remaining viable issues. Such a procedure, the court believes, constitutes the appropriate mix of "practicality and wise judicial administration." *Id.* at 288, 115 S.Ct. 2137.

### III.  *CONCLUSION*

For the reasons stated, the court ALLOWS Defendants' motion for a stay.

The parties shall file a joint report regarding the status of the state court action by February 25, 2004.

IT IS SO ORDERED.